Kessner v. Dowd-Jones and Buhl Good morning. Good morning. All right, as soon as we're settled, we'll get going. Mr. Serrano, I'm saying your name right? Yes, you are. Yes, thank you. You have reserved two minutes for a rebuttal. And my understanding is that Ms. Spears and Mr. Paul, is that right? Yeah, will be splitting the argument six minutes each. Is that right? Correct, Mr. Chairman. All right, so Mr. Serrano, the floor is yours. You may begin. Thank you. May it please the court. John Serrano from Syracuse on behalf of the appellant attorney Kessner. Abraham Lincoln once said that an attorney's time and advice are his stock and trade. However, the most important thing to that attorney is his reputation. And in this case, the appellant's reputation was destroyed as a result of respondents' publications. The first issue I think we need to consider, your honor, is what standard applies. When this was originally filed in the state of Florida, I believe it was a negligence standard. The case was moved to New York when there was still a negligence standard. 76A was amended in 2020 to include actual malice. The Gotwell case in the first department indicated however, that the statute should not be applied retroactively and the district court then utilized the malpractice, the actual malice insofar as a negligence, rather than negligence. I believe the law is that the you're supposed to apply the law of the state and the district in which the, in the department in which the district court is, and that would require a negligence standard. I would probably say, you know, say to the court, well, this case should be a question certified to the New York State Court of Appeals. Did you argue that in your brief counsel? I believe they did, your honor. There's a foot... One year after the last decision on this matter. That's not exactly 20HA material. I think there's an indication in the one of the footnotes in the brief. I don't think so. While I look for it, maybe I will look again. Continue. Thank you. So the issue should be referred to the New York Court of Appeals for what the standard is on New York law. However... You're saying we should be referring this to the New York Court of Appeals to figure out which version of the statute we should be applying here? The... Yes. Okay. And you think you did argue this in your brief? Right. Are you saying we should, or that normally we would, but since it's already now pending before the court... That's right. That was the next... Until they decide. Yes. It should be waived. Oh, I thought you were suggesting we should certify that. I was leading into the indication that on April 18th that Gottlieb case was, Gottwald case was argued in front of the New York State Court of Appeals, so I think any determination should await the Court of Appeals' decision. But in any event, when you consider this court's standard of review, de novo, construing the complaint liberally, and accepting all factual allegations is true, and all reasonable inferences is true, we have a situation where there is... We have a private individual we submit of a high stature as an attorney who was inherent... The conduct based on his practice was inherently improbable, and the most important things, one of the most important things, is that there was no discipline imposed on him for any of these charges that they're complaining about. He was never named in an SEC complaint, and I think moving one's residency from the state of New York to Florida does not equate with improper conduct in one's profession, and there were no well's notice letters sent to the appellant, and one of the most How do you prove a negative? The burden was almost on the client, the appellant, to prove a negative. What are you referring to now? I'm having a little trouble following your argument. Which of the libelous statements are you referring to? Well, we can start with Barron's, the lawyer at the center of the pump and dump case, and the only attorney mentioned in the article is the client, is my client. So, if you look at the individual statements within the article, do they accurately describe the allegations of the complaint and or your client's relationship to the various players? I think you need more than... I think more than that, your honor. I think the they were not, it does not appear that they're reporting on the case, which was not a pump and dump case. It was a malpractice type case where my client was dismissed with prejudice without even a deposition. There was no complaint versus the appellant as a result of that actions. The Madvax allegations give us a lot of alleged insight into the relationship between your client and Madvax, which is one of the companies that was part of the SAC amended complaint in the pump and dump scheme. And so, once we learned from Madvax that, for example, when they do these reverse mergers, they require that your client be installed as general counsel of the overtaken company that then goes on to engage in whatever conduct they engage in. And you combine that with the SAC complaint, doesn't that at least, it may be wrong, but the question is, in terms of the conclusions that you draw, they may prove not to be the case, but isn't it accurate the puzzle pieces that are described in the article? No, because there was no complaint, there was no SAC complaint as a result of . . . But reporters aren't required to wait for the SAC or for a governmental entity to bring a suit, right? I mean, the fair report privilege says that a reporter can rely on pleadings and summarize what's in a court document as part of a news article and draw inferences from it. They were not . . . we submit they were . . . that was a malpractice case, the Malvac case, and it was not . . . But it alleged that he failed in his role as a gatekeeper, he failed in his role to protect his client, right? Yes, that's what they alleged, but he specifically . . . I think you have to look at the Rule 56 statement proffer that my client submitted, where he specifically denied any wrongdoing in regard to that case. But all he pointed to was his complaint. He didn't point to any evidence in the record in his 56.1 statement. Well, I think . . . He just pointed to his verified complaint. His complaint and his specific denial that the conduct took place. I think that is very important when he has the specific denial, expressly denying the allegations of wrongdoing. In order to survive the Rule 56 motion, he has to have some evidence, if the standard that everybody at the time thought applied was actual malice, he has to have some evidence not only of falsity, but of actual malice. And so he has to be able to show some evidence of what either Baron . . . Well, that was post-dismissal, I guess. So, of what Ms. Buell had as information, and by simply denying the truth of the allegations, that doesn't tell us anything about whether she overstepped in her report. You're talking about the blogger now? Well, I think we're on the blogger because when we're talking about Rule 56 statements, am I wrong? I thought that the Baron's article got dismissed on the . . . 1286. Yeah. Okay. Insofar as the blogger is concerned, I think the most important there is she relies on a statement of an individual fisher, I think, and then my client submitted a statement from Fisher saying that he did not say that. She says that she got confidential information, and Fisher says, well, I never said that, but nobody connects the dots to say that Fisher was, in fact, the person she was purporting to rely on in saying that, right? Well, I think there's some indication that she spoke to . . . that Fisher indicated that he spoke to her. Oh, absolutely, but . . . And then he indicated . . . Oh, I'm sorry. No, please. And then he indicated that he didn't say that. So we submit that it's really a case of appellant being libeled based on who . . . distill it all down, being libeled on who he represents, and that's inappropriate. We submit for an attorney, and I'll rely on my rebuttal. Counsel? Yes. You didn't do any research . . . any discovery about what Ms. Buell . . . what her background was, what her sources were. No discovery. There was no discovery, no. But not because the court said there could be no discovery. No. You basically declined it, right? My client went on his proffer, which apparently  Thank you very much. We'll now hear from Ms. Spears for six minutes. Good morning. Natalie Spears on behalf of Dow Jones and William Albert. As noted, I'll be splitting my time with Counsel for Appellate Terry Buell, and I obviously will only be discussing the single Barron's article at issue. Which is a 1286 motion to dismiss, right? Correct. May it please the Court. The single Barron's article at issue accurately reported on public judicial proceedings and SEC records and is a textbook example of a news report protected by New York's absolute fair report privilege, as is the headline, which also is protected by the Fair Index Doctrine. The District Court's well-reasoned and methodical decision should be affirmed, as Mr. Kessner has not raised one issue on appeal that the District Court got wrong. Okay. Can I ask you just to stop for a second and talk about the issue that Mr. Sarando began with, which is the suggestion that we should be waiting for the New York Court of Appeals to rule? That issue is not related to the Barron's article or the 12B6. I believe that relates to- Mr. Paul. Yes. Okay. Thank you. As to the dismissal on 12B6 as to Dow Jones and Mr. Albert, no issue has been raised on appeal that the District Court got wrong. And respectfully, there is none. This one is not a close call. Most of the focus below, we heard just a bit about it a second ago, was on the headline, the lawyer at the center of SEC pump and dump case. It's not actionable for several reasons, as the District Court correctly held. First of all, it doesn't even name Mr. Kessner, so it's not independently actionable. And second of all, and in any event, it's black letter law that you've got to read the headline together with the body of the article. And when you do, it's easily a fair index of the body of the article because the article accurately reported on SEC records and judicial records, including the Mad Facts complaint. If I'm understanding the argument, I think it's based on the Karate's or Karate decision. Even if all the pieces are sort of in a micro sense accurate, if you put them together in a way that has an impact on the reader that makes something more sinister than it is, that can sustain a claim. But that's not the gist of the article or what the article said anywhere here. It has no merit. He didn't raise that on appeal. It's waived. It was something raised below, but not here. Neither the headline nor the body of the article says anything more sinister. The only statement, the only statement that he's even arguing on appeal is the one gatekeeper statement that is not only a simple background statement that he admits is true, but it doesn't even mention him. And it's also not capable of defamation for the reasons the district court held. As the district court correctly held, directly addressing the question you just raised, is looking at the article as a whole, Mr. Kessner didn't point to any statement in the article that came close to supporting a defamation claim because the article simply and accurately summarizes the allegations of the SEC and Mad Facts complaints and the undisputed facts set forth in SEC records. So as the district court correctly observed, Mr. Kessner's real beef isn't with the Barron's article, it's with the Mad Facts complaint, which the Barron's article accurately summarized, and with the undisputed facts in the public SEC filings, which the article accurately recited, that he or his firm were outside counsel to all three victim companies at a time when the SEC alleged each felt prey to a complaint carried out by an individual, Mr. Honig, who Mr. Kessner also represented and had established associations, and that Mr. Kessner was being sued by one of the victims, Mad Facts, for allegedly favoring Mr. Honig's interests over Mad Facts' detriment. And as the court pointed out, Your Honor pointed out as well, the allegations give insight into the SEC complaint, they're related. That's good journalism, reporting on public records and bringing the little-known Mad Facts complaint to light. It was absolutely privileged and it's at the heart, in fact, of the Fair Report privilege, which is absolute under New York law and part of New York's tradition of robust protection for free speech, as is the headline, which is protected under the Fair Index Doctrine because it's a summary of what's accurately reported in the article. So in summation, Mr. Kessner has no viable defamation claim as to the Barron's article. The district court was correct and we ask that you affirm the dismissal of Dow Jones and its veteran reporter, Mr. Upbrook, from this lawsuit. Thank you. Thank you very much. Mr. Paul, we'll hear from you for six minutes. Good morning, Your Honors. May it please the court, I'm Wesley Paul for Pelletier Rebuild. I'd like to clarify for the record here that we're not talking about the Barron's article with respect to my client because the district court found the Barron's article was not defamatory and the three issues or the three articles or statements in question with respect to my client are a statement that an article that was written on October 31st, 2018, that article largely related to a broker-dealer lay law that allegedly helped Mr. Kessner's client Barry Honig affect a number of pump-and-dump schemes. It may be of interest to note that 2020, in July of 2020, FINRA fined lay law $1.5 million for failing to recognize red flags of market manipulation. The second statement that's in question here, and I'm doing this for the benefit because I do know that there's two separate motions here. Can I ask you about that first one for a second? Yes. The one thing that sort of I paused about with respect to that one is the statement at issue is his crew of alleged bad actors, and then it lists various people, and at that point, if I'm understanding the chronology right, there wasn't actually an SEC complaint or a FINRA complaint or anything that alleged that Harvey Kessner was one of the bad actors, or at least alleged by name or identification. Am I wrong about that? The original SEC complaint was filed on September, I think, 7th, 2018. And that didn't make reference to counsel partner? It didn't make direct reference. There were some references that can be inferred, but there wasn't a specific reference in the amended complaint until the amended complaint came out in March of 2019. Which was after this statement. That's correct. Which is why I'm trying to figure out whether... But, Your Honor, I would say that prior to that statement, there was already, and Ms. Beal testified, affirmed to this in her affidavit in support of her motion for summary judgment, a number of public companies for which had filings and individuals, and these filings took the form of either Form 4s or Form 3s, 13Ds, 13Gs, where Mr. Kessner was noted as the attorney of record for either Mr. Honig, Mr. Honig's associates, or certain companies that were already under the purview in the investigation of the SEC. So that gave rise to some questions that my client, Ms. Beal, legitimately had. Okay. But in describing him as one of the alleged bad actors, nobody had yet alleged that he was one of the bad actors? That was her allegation. On that, there was no third party that actually used the word bad in reference to specifically Mr. Kessner. Or that made allegations of malfeasance on his part in connection with the SEC complaint? That is correct. However, I'm sure Your Honor also appreciates that bad is a statement that cannot be necessarily proven or disproven, which is... No, no, the alleged bad actors, right? Because that implies that I'm now going to tell you about the people that the SEC complaint targets. Of course. And at least at that point, he wasn't one of them. So I'm just trying to think about whether that survives 56, at least on falsity. And then we get to state of mind. Of course. Of course. I understand. Would you mind, I don't mean to... I was going to get to you if you didn't, so go ahead. It would be helpful, you know, we have this situation where everybody sort of by agreement litigated this with a certain understanding of New York law. We now know that there's a pending Court of Appeals decision that's going to answer that question. It could be in the way that you all agreed to, it could be differently. What is your view about what we should do? My view is that in this particular case, whatever the Court of Appeals ultimately decides is irrelevant to the decision in this case. Because there was no discovery taken. Under any applicable standard, and by the way, the applicable standard is not the negligence standard, which may or may not be applied in Florida. It's the chapter two standard, constitutional malice, gross negligence, in the state of New York. That's been the law since 1975. Gotwals is being appealed now, right? Gotwals is being appealed, yes. And the... Was it argued already? It's been argued, I believe, two months ago. And I don't know when the decision is going to come out. No one does. But I do say that I believe that under the facts of this particular case and how discovery played out and what was shown it doesn't matter what the standard was. But it seems to me you're asking us to say under either standard the result will be the same as opposed to that argument's been waived. The waiver argument is a very procedural and substantive issue that I'd like to point out. In the pre-motion conference... Did you argue that Ms. Buell would win under either standard without talking about waiver? Yes. Yes. Absolutely. But I would also say that independent of the de novo review, and by the way, my reading with respect to the de novo review is that it applies to the summary judgment order and decision. It does not apply, as is suggested, I believe, by Mr. Kessner to the striking of the Rule 56-1 statement of facts, responses and Mr. Kessner's additional statement of facts. Like in no discovery of how Ms. Buell works, who she talked to, how she typically prepares an article? It's our contention, Your Honor, that this is a slap suit. This is a classic slap suit. Ms. Buell's been at this for four years. The reporting that she had actually has resulted in three separate regulatory fines, resulting in millions of dollars. If anything, Ms. Buell deserves an MVP. She doesn't deserve to be vilified in open court. But going back to the issue of the applicable standard being moot and the issue with respect to waiver, none of these arguments were actually made in the briefing. And there is there was a footnote, actually, in one of our briefings, in our briefing, I believe it was footnote number three, which actually speaks to the fact that if you don't argue the point in the briefings is actually waived. Mr. Kessner's counsel at the time, who was Mr. Biss, who's not present here, said in open court that I do with regret, suppose I have to admit that the actual standard is probably the standard. I do understand that this is in connection with the pre-motion conference before the actual briefing. But the Gutwald case came out the same day as the district court's ruling. Mr. Kessner could have filed a motion for reconsideration in the district court. Mr. Kessner could have, and should have, filed briefing with appropriate argument in this court. But he did not. And now, a year later, it's not the kind of thing that 28J letter That's correct. That's absolutely correct. And that's what we're, that was our point in our response. And quite frankly, I think that it would be grossly improper to make that argument because it would create such a litany of really unfortunate situations that it would basically clog the courts for years to come. You think it would be appropriate for us to decide on the agreed-upon standard even if the court tomorrow, the New York Court of Appeals, came out with a decision that said a different standard applied? You think we should apply the standard? I believe so. I believe that under the facts of this particular case, that would be appropriate. Given the fact that there was actually no evidence out. All right. Thank you very much. Thank you very much. We'll now hear from Mr. Sarando for two minutes of rebuttal. Excuse me. May it please the court. Thank you. Judge Pooler, I believe it's on page 25, footnote 11, that talks about the standard. Barron's indicated that Mr. Kessner was not really mentioned too much in that article. I think when you look at the article itself, it talks about only one lawyer and mentions his name 1, 2, 3, 4, 5, 6, 7, 8, 9, 10. It's all about Mr. Kessner. Obviously, I think there's one case cited in our brief that indicates that a headline in and of itself can be defamatory. We submit that that was clearly defamatory. So far as the blogger is concerned, we It's a matter of Can I go back to footnote 11, page 25? All you do is acknowledge that there was an after enacted statute and that the court of appeals has not decided whether it should be given retroactive effect, but you didn't argue that it should be or that the standard had changed. There was never any disagreement among the parties as to what the standards ought to be. Right. That was well prior to my I'm not faulting you. I'm just saying that it seems to me that it's been I think when you look the district court relied heavily on the Palin case. The Palin case applies the actual malice standard. So if it should be a different standard, I think in all fairness to everyone, that standard should be applied. But in any event, even if you apply the actual malice standard to the blogs, it's sufficient to impose a liability based on the proffers from my client and the questions of fact that were created and when you consider the standard, the de novo review by this court and the standard of all favorable inferences go towards the non-moving party, that there is sufficient evidence to result in a trial on those claims. And I think when you look at everything I know I'm repeating myself, but it's also it almost seems like you're a bad actor based on who you represent. And the antithesis of the legal profession from an outsider looking at attorneys and that's inappropriate and should not be sanctioned by any court. We'll rely on our briefs for everything else. Thank you. Thank you both, or all three of you, excuse me. We will reserve decision. That concludes the argument portion of today's calendar. There's one other case on submission. We will reserve on that as well. And so with that, let me thank our clerk of court, our corporate deputy rather, and adjourn today's proceedings. Thank you.